**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHESH LALA & SHALINI LALA,<br><br>                    Plaintiffs,<br><br>v.<br><br>ADT SECURITY SERVICES, INC.,<br><br>                    Defendant. | Civ. No.  10-2698 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

ZWERLING & DESHPANDE
by:  Shailesh S. Deshpande, Esq.
829 Main Street
Hackensack, NJ 07601

    *Attorneys for Plaintiffs*

HARDIN, KUNDLA, MCKEON & POLETTO
by:  Paul Daly, Esq.
673 Morris Avenue
Springfield, NJ 07081

SHOOK, HARDY & BACON, LLP
by:  Charles C. Eblen, Esq. and Jason R. Scott, Esq.
2555 Grand Boulevard
Kansas City, MO 64108

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter arises out of a lightning strike that set Plaintiffs' house on fire. At the time of that incident, Plaintiffs house was equipped with an alarm system operated by Defendant, ADT Security Services, Inc. ("ADT"). Although it was designed to do so, the alarm failed to transmit a signal to ADT personnel so that they could alert the local fire department. Based on that failure, Plaintiffs filed suit in the Superior Court of New Jersey alleging that ADT is liable for the damage to their home caused by the lightning strike and ensuing fire. ADT removed to this Court, which properly has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

ADT now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, that motion will be granted and Plaintiffs' claims will be dismissed.

## I.  BACKGROUND

The lightning strike that gives rise to this dispute occurred on June 9, 2009. Roughly two years earlier, on June 21, 2007, Plaintiffs executed a Residential Services Contract ("the contract") with ADT. Under the contract, ADT agreed to install an alarm system in Plaintiffs' home that was designed to automatically alert an ADT call center in the event of a burglary, fire, or other emergency. For reasons that are not entirely clear from the record, the alarm did not function properly on the night Plaintiffs' home was struck by lightning, and did not alert ADT personnel to the ensuing fire.

The contract between Plaintiffs and ADT included a number of provisions that are relevant to this dispute. One of those provisions informed Plaintiffs that ADT agreed to provide

alarm services, but not insurance, and would not be responsible for losses in the same manner as an insurer.  The provision stated in relevant part that:

> WE ARE NOT AN INSURER….  THE AMOUNT YOU PAY IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABLITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY….  IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES.

(Def.'s Br. Supp. Mot. Summ. J., Ex. B at 4, ¶ 5.)

The following paragraph elaborated on that point by expressly limiting the damages that Plaintiffs could recover in the event ADT failed to carry out its duties, stating:

> IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT.  YOU AGREE THAT WE … ARE EXEMPT FROM ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES (INCLUDING INTERNET/WEBSITE SERVICES) WE PERFORM OR THE SYSTEMS WE PROVIDE INDER THIS CONTRACT.  IF IT IS DETERMINED THAT WE … ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT.  THESE AGREED UPON DAMAGES … ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.

(Id. at 4, ¶ 6.)

In a later portion of the contract, ADT specifically disclaimed all express and implied warranties by stating, "WE MAKE NO GUARANTEE OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  (Id. at 5, ¶ 16.)  Finally, the contract included a clause providing that its terms constituted the entire agreement between the parties.  (Id. at 6, ¶ 27.)

Despite those provisions, on April 15, 2010 Plaintiffs filed a suit in the Superior Court of New Jersey alleging that ADT is responsible for the damage to their house caused by the lightning strike and ensuing fire.  In their Complaint, Plaintiffs assert four causes of action, all of which are based on the fact that their alarm failed to alert ADT personnel of the incident so that they, in turn, could contact the proper local authorities.  In their first two claims, Plaintiffs allege that ADT defectively designed and/or manufactured the alarm installed in their home, and failed to warn them of the danger that the alarm would not properly function.  (Compl. ¶¶ 9, 16.)  Based on that contention, Plaintiffs argue in Count One of their Complaint that ADT is strictly liable for the damage to their house caused by the lightning strike and fire under the New Jersey Product Liability Act, N.J. Stat. Ann. § 2A:58C-1, et seq.  (Compl. ¶ 13.)  In the alternative, they claim in Count Two that ADT should be held liable under the common law theory of negligence. (Compl. ¶ 17.)  In Count Three of their Complaint, Plaintiffs allege that ADT "impliedly warranted that [alarm] was fit for the ordinary purpose for which it was intended, and was of good and merchantable quality," and breached those implied warranties by "supplying a product that was unfit for its ordinary purpose" and "posed a substantial … risk of failure to detect a fire." (Compl. ¶¶ 19-20.)  Finally, Plaintiffs assert in Count Four of their Complaint that ADT should be held liable for the damage to their house caused by the lightning strike and subsequent fire under the doctrine of res ipsa loquitur.  (Compl. ¶ 25.)  Plaintiffs could have asserted a breach of contract claim against ADT, but apparently chose not to do so.

Noting that this Court has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, ADT removed pursuant to 28 U.S.C. § 1446 on May 26, 2010.  Three months later, on August 20, 2010, ADT filed the

pending Motion for Summary Judgment. Both parties were allowed to submit written briefs outlining their respective positions, and appeared at oral arguments on October 18, 2010.

## II.  DISCUSSION

ADT's argument in support of its Motion for Summary Judgment takes two parts. First, the company contends that it owed no duty to Plaintiffs beyond those enshrined in the contract. Because the strict liability and negligence claims contained in Counts One, Two, and Four of Plaintiffs' Complaint sound in tort rather than contract and require Plaintiffs to demonstrate that ADT owed them some extra-contractual duty of care, ADT argues that it is entitled to summary judgment on those claims. In the alternative, ADT asserts that its liability should be limited to $500 – the maximum amount recoverable under the terms of the contract.

Additionally, ADT contends that it is entitled to summary judgment on the breach of implied warranty claims contained in Count Three of the Plaintiffs' Complaint. In doing so, ADT cites the disclaimer of implied warranties quoted above, which it claims effectively informed Plaintiffs that the company made no guarantee that the alarm was merchantable or fit for its intended purpose.

In opposition to ADT's Motion for Summary Judgment, Plaintiffs argue that the contractual relationship between the parties does not bar the tort claims contained in Counts One, Two, and Four of their Complaint. In doing so, they rely on a the principle that, "in a contractual relationship, an individual may be liable in tort if he or she undertakes 'gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things.'" Pfenninger v. Hunterdon Cent. Reg'l High Sch., 770 A.2d 1126, 1132 (N.J. 2001) (quoting Restatement (Second) of Torts § 323 (1965)).

5

Additionally, Plaintiffs contend that the Court should allow them to engage in discovery before deciding whether their claims fail as a matter of law.

With respect to their breach of implied warranty claims, Plaintiffs argue that the disclaimer contained in the contract is unenforceable because it was not "conspicuous" as required under New Jersey law. Additionally, Plaintiffs contend for the first time in connection with the pending Motion that the disclaimer provision is unconscionable because the parties to the contract did not have equal bargaining power in shaping its terms. In light of that disparity in bargaining power and their assertion that the disclaimer was not conspicuous, Plaintiffs ask that the Court sustain the breach of implied warranty claims contained in Count Three of their Complaint.

**A.  Standard of Review**

In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for summary judgment under Federal Rule of Civil Procedure 56. Under that standard, summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its

burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B. Plaintiffs' Claims**

Under that standard, Plaintiffs' claims fail as a matter of law. It is well-established that, "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 316 (N.J. 2002); see also New Mea Constr. Corp. v. Harper, 497 A.2d 534, 538-39 (N.J. Super. Ct. App. Div. 1985) (ruling that a construction company could not be held liable in tort for using materials of a lower grade than those specified in its contract because the obligation to use higher-quality materials "was clearly not an obligation imposed by law."). Accordingly, Plaintiffs must demonstrate that ADT had a legal obligation to provide alarm services independent of the one imposed by the contract in order to sustain the tort claims contained in Counts One, Two, and Four of their Complaint. They have failed to do so.

Plaintiffs do not assert that they had any relationship with ADT outside of the one created by the contract. Rather, they argue that their tort claims should be sustained because the subject matter of that contract related to the protection of their persons and property. In doing so, they rely solely on the Supreme Court of New Jersey's statement in Pfenninger, 770 A.2d at 1132, that "in a contractual relationship, an individual may be liable in tort if he or she undertakes 'gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things.'"

At first blush, that statement would appear to support Plaintiffs' claims. But Plaintiffs ignore the preceding sentence of Pfenninger, in which the Supreme Court of New Jersey clarified that "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." Id. Thus, Pfenninger did not hold that a plaintiff may convert a breach of contract into tort claims simply because the contract dealt with the protection of persons or things. Rather, it stands for the proposition that a plaintiff may assert tort claims against a defendant with whom he had a contract, but only if those claims arose out of some legal duty other than the one imposed by the contract. Since there is no such independent duty in this case – Plaintiffs simply assert that ADT did not properly carry out its obligation to provide alarm services, and that obligation arose out of the contract – the Court will grant summary judgment in favor of ADT on the tort claims contained in Counts One, Two, and Four of the Complaint.[1]

The Court will also grant summary judgment in favor of ADT on the breach of implied warranty claims contained in Count Three of Plaintiffs' Complaint. As discussed above, ADT

---

[1] Plaintiffs' argument that they are entitled to discovery before the Court decides the pending Motion for Summary Judgment is unavailing. There is no need for discovery, as it is undisputed that Plaintiffs had no relationship with ADT outside of the contract, and the lack of such a relationship dooms their claims as a matter of law.

specifically disclaimed all implied warranties by stating in the contract that "WE MAKE NO GUARANTEE OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Def.'s Br. Supp. Mot. Summ. J., Ex. B at 5, ¶ 16.)  Although they did not do so in their Complaint, Plaintiffs' now contend that disclaimer was inadequate and unenforceable under New Jersey law.

The enforceability of a disclaimer of warranties is governed by N.J. Stat. Ann. § 12A:2-316, which states that:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

The term "conspicuous" is defined by N.J. Stat. Ann. § 12A:1-201(10), which provides that:

> A term or clause is "conspicuous" when it is written in such a way that a reasonable person against whom it is to operate ought to have noticed it.  A heading printed in capital letters (as:  NON-NEGOTIABLE BILL OF LADING) is "conspicuous."  Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.

The disclaimer of implied warranties in Plaintiffs' contract with ADT appeared under a heading, which was printed in capital letters, stating "NO OTHER WARRANTIES OTHER THAN THE LIMITED WARRANTY AND, IF PURCHASED, THE EXTENDED LIMITED WARRANTY."  (Def.'s Br. Supp. Mot. Summ. J., Ex. B. at 5 ¶ 16.)  The body text of the disclaimer was also printed in capital letters.  (Id.)  Additionally, the contract included a table of contents of its "important terms and conditions" which noted the paragraph number in which the "no other warranties" clause appeared.  (Id. at 4.)  Thus, the disclaimer would appear to fit the definition of "conspicuous" contained in N.J. Stat. § 12A:201-10.  Plaintiffs contend, however, that the disclaimer was not conspicuous when placed in the context of the contract as a whole.  In

doing so, they note that several other provisions were printed using capital letters, and argue that the cumulative effect of those all-capital sections in the contract overwhelmed its readers such that no single provision stood out as important.

Plaintiffs' argument that the other all-capital provisions of the contract rendered the disclaimer of implied warranties inconspicuous is unavailing for two reasons. First, Plaintiffs admit that they did not read the contract, and thus would not have noticed the disclaimer regardless of the form in which it was presented. More importantly, an examination of the contract reveals that the disclaimer of warranties was sufficiently different from the provisions immediately surrounding it that a reasonable reader would have assumed it was important. The page on which that disclaimer appeared included only three other provisions that had body text written in capital letters.[2] The first of those provisions – which appeared in the paragraph immediately preceding the disclaimer of implied warranties – dealt with "warranty exclusions." See (Def.'s Br. Supp. Mot. Summ. J., Ex. B. at 5 ¶ 16.) Given the similar subject matter of that provision and the disclaimer of implied warranties, the emphasis given to the "warranty exclusions" clause does nothing to detract from the conspicuousness of the disclaimer of implied warranties. To the contrary, that emphasis would draw the eye of a reasonable reader and lead him to pay even closer attention to the disclaimer that followed. Moreover, only one sentence of the "warranty exclusions" paragraph was capitalized. The majority of that provision – roughly five sixths of its body text – was written in standard form. Therefore, it is unlikely that the all-

---

[2] The heading of each paragraph was in capital letters as suggested by the example in N.J. Stat. § 12A:1-201(10), but each heading was limited to a few words followed by a paragraph written in standard text. The previous page of the contract included several provisions written in capital letters, but those provisions are of limited relevance to the question of whether the disclaimer of implied warranties was "conspicuous." That inquiry requires the Court to determine whether a reasonable person would have noticed the disclaimer. N.J. Stat. § 12A:1-201(10). Since such a reader could normally be expected to inspect the contract one page at a time, it is unlikely that the all-capital provisions on a preceding page would draw his eye away from the disclaimer.

capital portion of the "warranty exclusions" paragraph would distract a reasonable reader from the disclaimer.

Similarly, the second paragraph the disclaimer of implied warranties included one sentence printed in capital letters. That sentence was separated from the disclaimer by 26 lines of standard-type text, and was only 29 words long. Thus, its inclusion in the contract would not have overwhelmed a reasonable reader or distracted him from the disclaimer of implied warranties. Finally, the page on which the disclaimer of implied warranties appeared included a provision printed in capital letters titled "FAMILIARIZATION PERIOD." (Id. at 5, ¶ 19.) That clause appeared at the end of the page – whereas the disclaimer was located roughly in the middle – and was only a few lines long. Given its lack of proximity to the disclaimer and relative brevity, the Court finds that it would not distract a reasonable reader and does not render the disclaimer inconspicuous.[3]

Plaintiffs' other argument with respect to their breach of implied warranty claims – that the disclaimer is unconscionable due to the disparity in bargaining power between the parties – is similarly unavailing. As discussed above, Plaintiffs did not assert that argument in their Complaint or any of their previous filings. The cases they cite in their brief in opposition to the pending Motion do not deal with disclaimers of implied warranties, but rather relate to the validity exculpatory clauses limiting a party's liability. Nevertheless, the Court notes that Plaintiffs' argument is at odds with the Supreme Court of New Jersey's recent holding in Stelluti v. Casapenn Enterprises, LLC, 1 A.3d 678 (N.J. 2010). That decision reiterated the longstanding

---

[3] The question of whether a reasonable person would notice a specific provision contained in a contract would normally be a factual inquiry to be resolved by a jury. However, under N.J. Stat. Ann. § 12A:1-201(10), "[w]hether a term or clause is 'conspicuous' or not is for decision by the court." Moreover, the "reasonable person" standard assumes a hypothetical reader and is not contingent on the Plaintiffs' behavior or knowledge. Therefore, the factual question of whether the disclaimer was conspicuous can be properly resolved at this stage of the litigation using the standard of review – a preponderance of the evidence – that would be applicable at trial.

principle of New Jersey contract law that an agreement is not invalid simply because it was a "contract of adhesion" – meaning that it was presented on a "take-it-or-leave-it basis." Id. at 687 ("Although a contract of adhesion may require one party to choose either to accept or reject the contract as is, the agreement may nevertheless be enforced."). In ruling that the contract in Stelluti was valid, the Supreme Court of New Jersey noted that (1) the contract related to widely-available services such that the plaintiff "could have taken her business" elsewhere, (2) the fact that the plaintiff "could have thought about it or even sought advice before signing" the contract, and (3) the fact that "no time limitation" was placed on her ability to do so. Id. at 688. Each of those considerations applies equally in this case. Several companies operating in New Jersey provide home alarm services, and Plaintiffs could have chosen to contract with one of those companies rather than accept the terms of ADT's agreement. Even if they did decide to use ADT, Plaintiffs could have read and considered the contract, and there is no indication that there was any time limit placed on their ability to do so. Therefore, like the Plaintiff in Stelluti, the Court does "not regard [Plaintiffs] in a classic 'position of unequal bargaining power' such that the contract must be voided." Id. To the contrary, the Court finds that the contract's disclaimer of implied warranties is valid and requires that ADT be granted summary judgment on the claims contained in Count Three of Plaintiffs' Complaint.

## III.  CONCLUSION

For the reasons set forth above, ADT's Motion for Summary Judgment is granted and Plaintiffs' claims are dismissed in their entirety with prejudice.

The Court will enter an Order implementing this Opinion.

 **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  November 24, 2010